# EXHIBIT B

LAW OFFICES

# CAREY, SCOTT, DOUGLAS & KESSLER, PLLC

901 CHASE TOWER
707 VIRGINIA STREET, EAST
P. O. BOX 913
CHARLESTON, WV 25323

MICHAEL W. CAREY
ROBERT E. DOUGLAS
JOHN A. KESSLER
S. BENJAMIN BRYANT
DAVID R. POGUE

TELEPHONE (304) 345-1234
TELEPHONE (304) 342-1111
FACSIMILE (304) 342-1105

May 13, 2019

John Austin, Esquire
United States Department of the Interior –
Office of the Solicitor
800 S. Gay Street, Suite 800
Knoxville, TN 37929

                    Re:     Justice Companies
                            Outstanding OSM Assessments

Dear Mr. Austin:

        I am writing to follow up on our conversation from Friday May 10, 2019 and to confirm our agreement to all material terms of a settlement of outstanding OSM liabilities as set forth in my letter of April 26, 2019. This agreement follows meetings which occurred on April 8, 2019 in Knoxville. Prior to our meeting, Jay Justice and Tom Lusk met with Mike Castle and Mark Snyder without counsel. They discussed the penalties against the companies and the individual penalties against Mr. Justice. They also discussed the abatement of cited conditions and reclamation work. Mr. Castle emphatically emphasized that he is focused on completing the field work. Mr. Castle then explained that, because there is no ongoing operation and the companies are not obtaining any financial benefit through non-compliance, he believes he has the authority to compromise the penalty assessments. Mr. Justice then proposed that the companies work to complete the reclamation work in lieu of the penalty assessments and that the penalty assessments be reduced by the cost of the reclamation work. If the total penalties are not reduced below $250,000.00 by the cost of the reclamation work, Mr. Justice proposed that the companies pay $250,000.00 over twelve months to satisfy the remaining penalty assessments. This meeting concluded with Mr. Justice agreeing to pay the AML and special reclamation fees over twelve months. Mr. Castle then indicated he would discuss this proposal with you and Mr. Henson and we would reconvene after lunch.

        After lunch, we met with our respective clients present and I conveyed to you the offer that was memorialized in writing on April 26, 2019. During this meeting, Mr. Castle indicated that the OSM wanted the penalties to be reduced by the cost of the reclamation on a dollar for dollar basis. You mentioned during this meeting that you would like to have some form of collateral, or some type of guarantee, that the companies would satisfy their obligations under any agreement. We agreed to provide you with the financial documents upon your request.

Mr. John Austin
May 13, 2019
Page | 2

After our meeting concluded, Mr. Justice and Mr. Lusk met again with Mr. Castle and Mr. Snyder. I understand that Mr. Justice and Mr. Castle discussed whether collateral would ultimately be necessary. Mr. Castle indicated that he would discuss this issue with you and that he did not believe collateral would be required to resolve the matter. During this meeting, it was agreed that Mr. Lusk would work with Mr. Snyder to prioritize the work in the field. Mr. Justice agreed that he would place equipment in the field by May 1, 2019 to complete the work and he met this deadline. He also agreed to complete the work by October 31, 2019 weather permitting. At this point, my clients believed an agreement had been reached as to all material terms. Mr. Lusk thereafter spent time in the field on April 15-18, 2019 with Mr. Snyder and they agreed on the work that would be completed and a timeframe. My letter of April 26, 2019 followed and concluded by inviting you to request any additional information necessary.

Following my April 26, 2019, correspondence, you never requested any specific financial information and never requested collateral in any specific form or any specific amount. We next discussed this matter on May 10, 2019, at which time I asked what was necessary to finalize the agreement. In response, you said that the companies must provide financial statements and collateral to secure payment of the penalty assessments (or reclamation with costs up to the amount of the penalty assessments). The timing of this request is surprising considering my April 26, 2019 correspondence offered to provide additional information upon request. We did not hear anything from you in this regard until May 10, 2019. Now it is our understanding that the Department of Justice is involved and is preparing litigation against the companies and individuals. The timing of the involvement of the Department of Justice in this matter is likely no coincidence considering the action filed last week to collect allegedly delinquent mine safety and health assessments. This is particularly surprising considering that my clients left Knoxville on April 8 with an agreement as to all material terms and Mr. Castle and Mr. Snyder were satisfied with both the terms and the plans for the work in the field after Mr. Snyder's meeting with Mr. Lusk.

After you stated on May 10, 2019 that financial statements and collateral would be required, we worked through the weekend to meet these requests and now specifically agree to provide financial statements and collateral to secure the payment of the cost of reclamation up to the amount of the penalty assessments. The companies have recently obtained a verbal commitment from a lender that will allow the companies to provide a letter of credit in the amount of the outstanding penalties. This letter of credit will be used to secure payment of the penalty assessments (or reclamation with costs up to the amount of the penalty assessments) and will secure the payment of the $250,000.00 penalty if the penalty assessments are not reduced to less than $250,000.00 by the reclamation cost. We can immediately move forward with the letter of credit as soon as we have an executed agreement we can share with our lender. Additionally, I will need you to provide me all of the counterpart information from OSM so that it can be listed on the letter of credit. If still necessary, we will provide you with the most recent financial statements for the companies which the OSM contends owe penalty assessments.

The Justice family appreciates Mr. Castle's willingness to meet and work through these issues and his professionalism throughout this process. We believe this agreement will accomplish the primary goal of ensuring that the conditions on the ground comply with the law. As previously

Mr. John Austin
May 13, 2019
Page | 3

mentioned, this agreement will allow the companies to complete the reclamation while at the same time continuing to operate and saving approximately 450 jobs.

I understand from discussions with your office last week that the filing of one or more complaints is imminent.  This is of grave concern and bewilderment to my clients.  We believe it is unnecessary, as we have now met every term you requested to settle this matter.  If this file has been forwarded to the Department of Justice, I request that this correspondence be immediately provided to the individuals working on this matter and that they be notified we have agreed to all of the OSM's settlement demands.  Additionally, please immediately provide me with their names and contact information.

Sincerely,

/s/ Michael W. Carey

Michael W. Carey

cc:    Mike Castle
       John Henson, Esquire
       Tom Lusk
       James C. Justice, III