**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| JAMES C. JUSTICE III; A & G COAL CORP.; CHESTNUT LAND HOLDINGS, LLC; BLUESTONE COAL CORPORATION; KENTUCKY FUEL CORPORATION; NATIONAL COAL, LLC; PREMIUM COAL COMPANY, INCORPORATED; S AND H MINING, INC.; and TAMS MANAGEMENT, INC., | ) ) ) ) ) ) ) ) ) |
| | )     Civil Action No. 7:19-cv-00381 |
|               Plaintiffs, | ) |
| v. | ) |
| | ) |
| OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) ) |
| | ) |
|               Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant, Office of Surface Mining Reclamation and Enforcement (OSMRE), a bureau of the U.S. Department of the Interior (DOI), moves to dismiss Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(6) because this Court lacks subject matter jurisdiction and Plaintiffs fail to state a claim. This is a purported breach-of-contract action. The allegations arise out of Plaintiffs' failure to comply with, or appeal, the abatement requirements of fifteen cessation orders issued by OSMRE—including two imminent harm cessation orders—and failure to pay over $4.2 million in civil penalties and reclamation fees. Plaintiffs allege DOI entered into a binding contract with Plaintiff to settle the $4.2 million for $250,000. Plaintiffs ask this Court to issue a declaratory judgment that a contract exists and then to enforce its terms. No such contract, however, exists or ever existed. And this Court does not have the authority to enforce such a contract even if it did exist.

1

The Court must dismiss Plaintiffs' complaint for lack of subject matter jurisdiction under Rule 12(b)(1) for two independent reasons. First, DOI is immune from this suit. The Tucker Act, 28 U.S.C. § 1491, waives the government's sovereign immunity for contract claims only if there is an express or implied-in-fact contract, neither of which exists here. Moreover, even if the Court were to find an express or implied-in-fact contract, the Tucker Act does not waive the government's sovereign immunity for claims seeking declaratory relief and injunctive relief, *i.e.* specific performance of the contract. It only waives sovereign immunity for breach-of-contract claims seeking money damages. Second, the Tucker Act and Little Tucker Act vested jurisdiction for breach-of-contract actions for amounts above $10,000 exclusively with the U.S. Court of Federal Claims, not U.S. District Courts. 28 U.S.C. §§ 1491(a), 1346(a).

The Court also should dismiss Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6) for two additional reasons. First, Plaintiffs have not sufficiently alleged offer and acceptance, which are essential ingredients to a contract action. To the extent Plaintiffs try to salvage their claim by asserting promissory estoppel based on statements made by a lower-level OSMRE employee, that claim fails because the employee lacked authority to bind the government as set forth by federal statute. Second, the agreement Plaintiffs attempt to allege fails by its own terms because it was not to be performed within a year of the agreement, thus requiring it to be in writing pursuant to the Statute of Frauds.

## FACTUAL BACKGROUND

### I.     The Office of Surface Mining Reclamation and Enforcement

In 1977, Congress enacted the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. § 1201, *et seq.*, to "establish a nationwide program to protect society and the

2

environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). OSMRE is the bureau of DOI that administers and enforces SMCRA. *Id.* § 1211(c).

SMCRA has two functions. It governs the reclamation of mine sites abandoned or inadequately reclaimed prior to 1977, and, second, it regulates current mining practices. Under the abandoned mine land program, OSMRE collects a reclamation fee for each ton of coal produced in the United States. *Id.* § 1232(a). Under 30 U.S.C. § 1232(e), "[a]ny portion of the reclamation fee not properly or promptly paid pursuant to this section shall be recoverable, with statutory interest, from coal mine operators, in any court of competent jurisdiction in any action at law to compel payment of debts."

Under its regulatory program, 30 U.S.C. §§ 1251–1279, OSMRE operates a permitting, inspection, and enforcement program in federal program states, such as Tennessee, that have not obtained or maintained primary regulatory authority. *Id.* § 1254. In states in which OSMRE has approved a state's regulatory program, such as Virginia, the state has the primary regulatory authority, and OSMRE retains an oversight role, which includes back-up enforcement authority. *Id.* § 1255. In addition to permitting requirements, *id.* § 1256, regulatory authorities inspect surface coal mining operations to ensure there are no violations of SMCRA. *Id.* § 1267. If a violation is discovered, SMCRA sets forth a multi-step process to correct or contest the violation.

In federal program states, OSMRE inspectors, acting as authorized representatives of the Secretary, inspect surface coal mines at regular intervals and issue notices of violations when needed to address violations that do not rise to the level of imminent harm. *Id.* § 1271(a)(3). A notice of violation prescribes a reasonable time for abatement of the violation, but not more than ninety days. *Id*. The recipient also may challenge the violation administratively. *Id.* § 1275(a). If a recipient fails to abate the violation within the prescribed time, OSMRE must issue a cessation

order (a Failure to Abate Cessation Order). *Id.* § 1271(a)(3). Alternatively, if a violation presents an imminent harm, OSMRE must issue a cessation order immediately (an Imminent Harm Cessation Order). *Id*. § 1271(a)(2).

If a permittee does not abate the violation within thirty days of the issuance of a cessation order, OSMRE **must** take at least one of the following actions: (1) impose individual civil penalties, (2) suspend or revoke permits, or (3) ask the Department of Justice (DOJ) to file a lawsuit or seek criminal penalties against corporate permittees and individual agents. 30 C.F.R. § 845.15(b)(2) ("If the permittee has not abated the violation within the 30-day period, the Office **shall** take appropriate action pursuant to section 518(e), 518(f), 521(a)(4) or 521(c) of the Act . . . .") (emphasis added); 30 U.S.C. §§ 1268(e), 1268(f), 1271(a)(4), 1271(c).

Additionally, SMCRA requires OSMRE to assess civil penalties when it issues a cessation order, and federal regulations require OSMRE to assess civil penalties for certain notices of violations. *Id.* § 1268(h); 30 C.F.R. § 845.12. SMCRA also affords ample opportunity for operators to contest any civil penalties. *See, e.g*., 30 U.S.C. § 1268; 30 C.F.R. §§ 845.17–.20.

## II.     Plaintiffs' Operations and Interactions with OSMRE

James C. Justice III, with his father and sister, own various coal-mining operations in several states, including Virginia, West Virginia, Tennessee, and Kentucky. The Justice Companies have a history of noncompliance with SMCRA and, over the last two years, OSMRE has issued multiple Failure to Abate Cessation Orders and Imminent Harm Cessation Orders to various Justice Companies. In early 2019, the OSMRE Knoxville, Tennessee Chief of the Field Compliance Branch, Mark Snyder, reached out to the Justice Companies through their counsel, Aaron Houchens, to discuss the SMCRA noncompliance issues.

### a.   The February 26, 2019 Meeting

Representatives of the Justice Companies and OSMRE met on February 26, 2019, to discuss the Justice Companies' actions to remedy and abate the various violations at their mines. Present at this meeting were employees Tom Lusk and Mark Wooten representing the Justice Companies, and Snyder and Michael Castle (the Lexington/Knoxville Field Office Director) for OSMRE. Snyder presented the various violations to Lusk and Wooten, who agreed to internally discuss how to remedy the issues.

### b. The April 8, 2019 Meeting

About a month after the February meeting, a lawyer for the Justice Companies, Christopher Pence, contacted John Henson, a staff attorney in the U.S. Department of the Interior Field Solicitor's Office[1], to schedule another meeting with OSMRE to discuss the numerous outstanding violations. At this time, the Justice Companies had neither complied with, nor appealed, the abatement requirements of fifteen cessation orders—including two imminent harm cessation orders—and failed to pay over $4.2 million in civil penalties and reclamation fees. Because of the Justice Companies' blatant failure to comply with the law, OSMRE had already asked the Solicitor's Office to refer the cases to DOJ to take affirmative legal action against the Justice Companies, and Henson informed Pence of this development.

The parties scheduled a meeting to discuss abating these violations for April 8, 2019, in Knoxville. The April 8, 2019 meeting took place as scheduled. Present at the meeting for the Justice Companies were Lusk and Justice, along with their attorneys, Pence and Mike Carey. Present for OSMRE were Snyder, Castle, Bill Winters (Knoxville Field Office Chief of Program Support Branch), and their attorneys John Austin (the Field Solicitor) and Henson.

---

[1] The Office of the Solicitor generally handles the delegated legal work of DOI. *See* 209 U.S. Department of the Interior Manual 3, *available at* https://www.doi.gov/sites/doi.gov/files/elips/documents/chapter_3_solicitor.doc.

As the meeting approached, Lusk and Justice requested a "pre-meeting" with Snyder and Castle without lawyers present. Letter, Carey to Austin (May 13, 2019), ECF No. 19-2 at 2. During this pre-meeting, OSMRE explained the breadth of the violations, and Lusk and Justice previewed a settlement proposal they would make at the full meeting. *Id.*

Immediately after the pre-meeting, the full group convened. *Id.* Carey then presented the Justice Companies' proposed terms of a potential settlement agreement. *Id.* Austin and Henson told Carey during the meeting that OSMRE did not have authority to settle the violations because the amount was too large and federal law required DOJ to handle the matter. *See* 31 U.S.C. § 3711(a)(2); Letter, Austin to Carey (May 15, 2019), ECF No. 19-3 at 2. Austin and Henson suggested they would pass along any written plan or proposal to those with authority to handle the decision but expected DOJ would need information to support Carey's claims about the Justice Companies' financial situation. *Id.*; Letter, Carey to Austin (May 13, 2019), ECF No. 19-2 at 3. They also reminded the Justice Companies' representatives that the companies were subject to a legal obligation to abate violations, regardless of the possibility of litigation, and could show good faith by complying with its existing legal obligation. *Id.*

After the meeting with the lawyers, Lusk and Justice requested a "post-meeting" with Castle and Snyder. *Id.* At 3. During the post-meeting, Lusk, Justice, Castle, and Snyder discussed the potential need for collateral as part of any settlement agreement, and Lusk told Castle and Snyder that the need for collateral could be an issue because the Justice Companies had several liens on most of their assets. *Id.* Lusk and Justice also proposed deadlines by which the Justice Companies would start abating the numerous violations as required by federal law regardless of any settlement agreement. *Id.* Despite the statements made during the full meeting, Plaintiffs allege

that at this post-meeting, they "believed an agreement had been reached as to all material terms."
Letter, Carey to Austin (May 13, 2019), ECF No. 19-2.

### c. Post-April 8, 2019 Meeting Follow-Up

After the April 8 meeting, Pence spoke with Henson informing him of a draft settlement proposal that OSMRE could expect from Pence. On April 26, 2019, Carey sent a letter to Austin and Henson formalizing the Justice Companies' settlement offer. The letter stated, "it is our intent to resolve these issues with the OSM and set forth the following formal ***proposal***, which we verbally conveyed to you during our meeting. We anticipate that, ***once we agree to all the terms***, the agreement will be memorialized in the framework of a Consent Decree." Letter, Carey to Austin & Henson (Apr. 26, 2019) (emphasis added), Ex. 1.[2] The letter concluded by stating, "We look forward to your response and will provide you additional information from the companies you need ***to consider this proposal***." *Id.* (emphasis added).

Carey and Austin spoke via telephone on May 10, 2019, when Austin again stated that DOI had no authority to settle the violations because the amounts were too large and reiterated the information Austin expected DOJ to request when considering any settlement proposal. Letter, Carey to Austin (May 13, 2019), ECF No. 19-2 at 3. Carey then sent Austin a letter on May 13, 2019, asserting for the first time the Justice Companies' desire to "confirm [their] agreement to all material terms of a settlement of outstanding OSM liabilities as set forth in my letter of April 26, 2019." ECF No. 19-2.

---

[2]     Although Plaintiffs did not attached this letter to the Complaint, it is referenced in the May 13, 2019 letter attached to the Complaint as Exhibit B, ECF No. 19-2.

Austin acknowledged receipt of Carey's May 13 letter on the same day:

From: Austin, John [mailto:john.austin@sol.doi.gov]
Sent: Monday, May 13, 2019 4:26 PM
To: Chris Pence
Cc: Henson, John; Michael Castle; Mike Carey; Shope, Thomas; Shannon Goessling; Patricia Scanlon; Georgene Thompson; Moore, Julia
Subject: Re: [EXTERNAL] Re: Correspondence

At the conclusion of a conference call that Mr. Henson and I just had with Mr. Castle, OSMRE Regional Director Tom Shope, Regional Solicitor Shannon Goessling, and several representatives from OSMRE's Division of Financial Management, I was asked to acknowledge receipt by all OSMRE & SOL employees to whom you sent the letter. I will be replying more formally, probably tomorrow, to the allegation that you have a deal with OSMRE to settle civil penalty debt for $250,000 and that we are requesting collateral for that amount. I want to circulate my formal response to my OSMRE colleagues to make sure what I will say is accurate and has the right tone.

I encourage your clients to continue performing abatement measures in Tennessee and anywhere else there is an unabated violation of SMCRA attributable to one of the Justice Companies. Continuing the abatement of environmental violations is the best way your clients can show genuine interest in not only obtaining a settlement agreement, but also abiding by the terms of any settlement we can negotiate.

John Austin, Field Solicitor

Carey quickly responded to Austin's May 13 email with a clarification:

On Mon, May 13, 2019 at 4:40 PM Mike Carey <mwcarey@csdlawfirm.com> wrote:

nail.google.com/mail/u/0?ik=5dae094460&view=pt&search=all&permmsgid=msg-f%3A1633698739354537736&dsqt=1&simpl=msg-f%3A1633...

19                              DEPARTMENT OF THE INTERIOR Mail - [EXTERNAL] Correspondence

John—from your statement below, it appears that my letter was not clear. It is intended that the LOC will secure the payment of the full amount of the penalties which we understood was somewhere in the neighborhood of $4 million. The LOC would then be reduced dollar for dollar as the reclamation work is performed. If upon, the completion of the agreed to reclamation there is an outstanding balance of the penalties exceeding 250k, then that would be compromised for $250k. Mike

Austin then responded to Carey's May 13 letter on May 15, stating:

> I need to reiterate what you and your clients have been told: Neither OSMRE nor any of its employees nor the attorneys representing the Secretary of the Interior have the authority to settle a debt owed to the United States that exceeds $100,000.00 without the approval of the U.S. Department of Justice (DOJ). *See* 31 U.S.C. § 9711 and 31 C.F.R. § 902.1. Therefore, notwithstanding your clients' assertion about a deal they believe they made with OSMRE, there is not nor has there been an authorized agreement with the United States to settle the monetary debts of your clients for $250,000.00, or for any other amount.

ECF No. 19-3. The letter additionally explained:

> We have suggested on more than one occasion that a showing of good faith will benefit your clients if they intend to pursue settlement. For instance, they can show good faith by continuing to abate the environmental violations that exist in Tennessee and by making good on the settlement agreement negotiated on their behalf in 2017 by Zachary Wright (copy attached).
>
> We look forward to working out a settlement with you, your clients, and DOJ. We are standing by to answer any questions you might have.

> In addition, as we explained in our face-to-face meeting in April, in order to settle these claims, we will require financial statements and any other information you can provide that will demonstrate a settlement is in the best interests of the citizens of the United States. We will also need documentation of your belief that a settlement will preserve 450 jobs.

*Id.* That same day, Carey responded by email reflecting his understanding that DOJ needed to receive and consider any settlement offer:

> On Wed, May 15, 2019 at 6:23 PM Mike Carey <mwcarey@csdlawfirm.com> wrote:
> John--we certainly want to resolve this matter before suit is filed. To that end please advise me of the deadline to submit our offer and will you confirm that DOJ will not institute litigation until our offer is received and considered.
>
> Sent from my Verizon, Samsung Galaxy smartphone

9

Carey sent Austin a letter the next day, on May 16, stating, "I have asked you to provide me with a deadline for us to submit the requested *offer*." Letter, Carey to Austin (May 16, 2019) (emphasis added), Ex. 2.

The next day, Plaintiffs filed this lawsuit asking this Court to declare the existence of a contract and seeking equitable relief to enforce its terms. As set forth below, this Court lacks jurisdiction over Plaintiffs' claims, and Plaintiffs have failed to state claim.

## STANDARD OF REVIEW

### I. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue, and the Court must address it before reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95–102 (1998); *accord Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).[3] The party asserting federal jurisdiction bears the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Under Rule 12(b)(1), a defendant may proceed in one of two ways. First, in a facial challenge, a defendant may attack the face of the complaint and contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Wells v. Artrip*, 2017 WL 1788385, at *2 (W.D. Va. May 3, 2017) (Jones, J.).

Second, in a factual challenge, a defendant may attack subject matter jurisdiction as a matter of fact and argue "that the jurisdictional allegations of the complaint [are] not true." *Id.* When a defendant challenges the factual basis for subject matter jurisdiction, "'[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary

---

[3]     Internal citations and quotation marks omitted throughout.

judgment proceeding." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* A district court should grant a Rule 12(b)(1) motion to dismiss making a factual challenge "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768; *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

## II.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). While the Federal Rules of Civil Procedure "require[ ] only a short and plain statement of the claim showing that the pleader is entitled to relief, it must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. In considering such a motion, the Court takes the plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC,* 385 F.3d 836, 841 (4th Cir. 2004). Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a court "may consider attachments to a complaint or the motion to dismiss if 'integral to the complaint and authentic.'" *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016).

# ARGUMENT

## I.     This Court lacks subject matter jurisdiction

### a.   Sovereign immunity precludes subject matter jurisdiction.

Plaintiffs first seek declaratory judgment finding that "the Settlement Agreement is valid and enforceable against OSMRE." Am. Compl. ¶ 41, ECF No. 19. Plaintiffs also seek injunctive relief, asking the Court to prohibit OSMRE from "tak[ing] further steps regarding the underlying assessments, fees and penalties" because such action would be allegedly inconsistent with the terms of the non-existent settlement agreement. *Id.* ¶ 41. In short, this case lies in contract. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (finding a suit over a breached settlement agreement is a claim for breach of contract). The Court, however, lacks jurisdiction over Plaintiffs' claims because the United States has not waived its sovereign immunity for this claim and the type of relief it seeks.

As a sovereign, the United States is immune from suit unless it consents to being sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). When the United States consents to suit for a class of cases, the terms of its consent circumscribe the Court's jurisdiction to entertain a particular suit. *Id.* at 586–87; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

"A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992). Because OSMRE is an agency of the federal government, an action against OSMRE must satisfy all the requirements for actions commenced against the United States. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

12

Therefore, Plaintiffs must demonstrate that Congress, by statute, waived OSMRE's sovereign immunity for this Court to entertain jurisdiction over this contract cause of action. Plaintiffs cannot do so here because Congress has not done so.

    **1.   Plaintiffs have not pled, and cannot prove, an express or implied-in-fact contract to establish a waiver of sovereign immunity.**

Pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346, Congress waived the United States' sovereign immunity for breach-of-contract claims, but only if an express or implied-in-fact contract exists. *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996). Here, Plaintiffs have not pled an express or implied-in-fact contract. Further, looking beyond the complaint, as the Court may do on a Rule 12(b)(1) motion, the facts demonstrate the absence of any express or implied-in-fact contract.

An express or implied-in-fact contract requires: mutual assent (offer and acceptance), consideration, legal capacity, and a lawful subject matter. *Williston on Contracts* § 1:5 (4th ed. 2019). "An express contract is a contract the terms of which are stated by the parties; an implied contract is a contract the terms of which are not explicitly stated. The legal effect of the two types of contracts are identical; the distinction is based on the way in which mutual assent is manifested." *Id.* "A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications." *Klebe v. United States*, 263 U.S. 188, 192 (1923). Here, Plaintiffs do not plead, and cannot establish, the most fundamental element of an express or implied-in-fact contract: offer and acceptance. *See also infra* II.a. Without this, they have not alleged a claim for which OSMRE has waived its sovereign immunity.

        **A. Plaintiffs did not plead an express contract.**

First, on the face of the Complaint, Plaintiffs failed to allege an express contract because although they allege Justice's numerous offers to settle and Justice's agreement to take action, the

Complaint fails to allege any actual acceptance by OSMRE. For example, Paragraph 18 of the Complaint states: "Justice then *proposed* that the companies work to complete the reclamation work" and "Justice *proposed* that the companies pay $250,000.00." (emphasis added). Then, Paragraph 18 baldy concludes that "Castle and Jay Justice both agreed to the foregoing terms," but it fails to allege that anyone with authority accepted the Justice offer. Instead, Plaintiffs insufficiently attempt to meet their pleading requirement by asserting the legal conclusion that the parties had an agreement without alleging any acceptance by an OSMRE employee with authority of Justice's proposals.

Castle clearly lacked any authority to settle the Justice Companies' SMRCA violations. Actions of government agents who exceed their contracting authority do not bind the government. The Supreme Court held:

> Anyone entering into an agreement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 384 (1947).

Taking Plaintiffs allegations as true that there was a settlement agreement for $250,000 (Am. Compl. ¶ 18), Castle would have been blatantly acting outside his authority if he accepted a $250,000 settlement offer. Castle is the Field Office Director of OSMRE's Knoxville and Lexington Field Offices and, in that position, has no authority to offer a settlement in the amount of $250,000.00. Under 31 U.S.C. § 3711(a)(2), the "head of an executive, judicial, or legislative agency may compromise a claim of the Government of *not more than $100,000*." (emphasis added). As Field Office Director, Castle is not the head of an agency nor was he designated by the head of an agency to settle this claim. Moreover, no one at OSMRE or DOI had authority under

the statute to settle the violations at issue here, which totaled over $4 million.[4] As clarified by 31 C.F.R. § 902.1, "when the principle balance of a debt . . . exceeds $100,000 . . . the authority to accept the compromise rests with the Department of Justice." The alleged negotiated settlement was in the amount of $250,000.00 and the violations exceeded $4 million.[5] Both amounts clearly fall under the discretion of DOJ, not anyone at OSMRE or DOI, and certainly not Castle.

Further, the attachments to the Complaint show there was no actual acceptance by anyone, let alone someone with authority. The Complaint quotes an attached letter, which should thus be considered part of the complaint. ECF Nos. 19-2, 19-1. *See Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016) ("A court passing on a motion to dismiss may consider attachments to a complaint or the motion to dismiss if integral to the complaint and authentic."). The letter states the pre-meeting with Castle and Justice ended with Castle "indicat[ing] he would discuss this **proposal** with [Austin] and Mr. Henson and we would reconvene after lunch." ECF No. 19-2 at 2 (emphasis added). The letter continues: "After lunch, we met with our respective clients present and I conveyed to you the **offer** that was memorialized in writing on April 26, 2019"—an offer made eighteen days after the meeting. *Id.* (emphasis added). If Plaintiffs left the April 8

---

[4]    Plaintiffs omit the amount of the debt owed in their Complaint. Regardless, they included their desire to settle the debt for $250,000.00 (Am. Compl. ¶ 18), which also was over the statutory settlement authority limit of $100,000.00.

[5]    DOI's internal manual also makes clear that DOJ, not OSMRE, has authority to settle debts over $100,000. *See* 205 U.S. Department of the Interior Manual 7.1 ("Bureaus must refer a debt that exceeds $100,000, unless otherwise provided by law or authorized by the U.S. Attorney General, to the Office of the Solicitor for referral to the Department of Justice. The authority to suspend or terminate debt that exceeds $100,000 rests with the Department of Justice (31 CFR Part 903)."). The DOI Manual is binding on its bureaus. *See* 011 U.S. Department of the Interior Manual 1.2(b) ("Bureaus and offices must comply with the provisions of the [Manual], except to the extent the provisions are superseded by appropriate authority: e.g., a statute, regulation, Executive Order, Secretary's Order, or court decision[.]"). *Cf. Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1433 (Fed. Cir. 1998) ("As we have held before, agency procedures must be followed before a binding contract can be formed.").

meeting with the belief they had reached a settlement agreement, they would not have then made a written settlement offer to OSMRE over two weeks after the meeting. Therefore, on the face of Plaintiffs' May 13 letter and their Complaint, did not have any express contract with OSMRE and did not plead one.

### B. Plaintiffs also did not pled an implied-in-fact contract.

Plaintiffs also did not plead an implied-in-fact contract for three reasons: (1) the mere assertion of an agreement does not meet the pleading requirements; (2) the correspondence attached to the Complaint shows no meeting of the minds to create a contract; and (3) Castle lacked authority to create a contract.

"An agreement implied in fact is founded upon a meeting of minds, which although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Williston on Contracts* § 1:5. "Such an agreement will not be implied unless the meeting of minds was indicated by some intelligible conduct, act or sign." *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 598 (1923). First, the Complaint is devoid of any facts alleging the conduct, act, or sign from OSMRE that there was an agreement. Instead, Plaintiffs attempt to meet this pleading requirement by asserting the legal conclusion that Justice and Castle had an agreement. Am. Compl. ¶¶ 18, 20. Legal conclusions are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, OSMRE's conduct as pled showed it did not believe there to be a settlement agreement because Austin's May 15, 2019 letter (another attachment to the Complaint) explicitly states: "I need to reiterate what you and your clients have been told: Neither OSMRE nor any of its employees nor the attorneys representing the Secretary of the Interior have the authority to settle a debt owed to the United States that exceeds $100,000 without the approval of the U.S.

Department of Justice (DOJ)." ECF No. 19-3 at 1. The Complaint thus alleges that OSMRE's actions demonstrate it lacked any belief or understanding that there was a settlement agreement. Therefore, as pled in the Complaint, there was no "meeting of the minds" or some conduct, act, or sign from OSMRE that there was an agreement. Instead, the facts Plaintiffs pled of OSMRE's conduct established a lack of an agreement.

Third, to the extent Plaintiffs allege Castle's purported agreement to terms created an implied-in-fact contract, Castle lacked any actual or apparent authority to bind OSMRE. "If an agent cannot commit a party to an express contract, he or she cannot make an implied-in-fact contract either." *Williston on Contracts* § 1:5. *See also Sutton v. United States*, 256 U.S. 575, 580 (1921) ("The limitation upon the authority to impose contract obligations upon the United States is as applicable to contracts by implication as it is to those expressly made."); *see also S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 4 (Fed. Cir. 1985) ("It is well established that a purported agreement with the United States is not binding unless the other party can show that the official with whom the agreement was made had authority to bind the government."). As explained above, Castle lacked any actual authority, and the thus could not bind OSMRE to an express or implied-in-fact contract.

Nevertheless, Plaintiffs contend that the agreement exists because Castle acted with apparent authority. Federal statutes and regulations, however, clearly preclude Castle from agreeing to a settlement, and the existence of these laws provides adequate notice of Castle's lack of authority to Plaintiffs. As the Supreme Court explained, "[j]ust as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Merrill,* 332 U.S. at 385–86. Therefore, Castle could not have exhibited apparent authority because Plaintiffs should

have known that he was acting outside of his authority. Therefore, any argument that Plaintiffs sufficiently pled a contract implied-in-fact based on the conduct of Castle fails as a matter of law because he lacked any authority to bind OSMRE and Plaintiffs were on notice of his lack of authority.

In summary, Plaintiffs failed to plead an implied-in-fact contract on the face of the body of the Complaint, the attachments to the Complaint, and as a matter of law.

### C. Looking beyond the Complaint as the Court may do on a Rule 12(b)(1) Motion, two letters referenced in the Complaint's attachments show there was no contract.

Looking beyond the Amended Complaint and its attachments, two letters referenced in the attachments—but conveniently omitted by Plaintiffs—demonstrate that Plaintiffs themselves did *not* believe they had entered into a settlement agreement with OSMRE as a result of the April 8, 2019 meeting. As such, this further evidence of a lack of contract demonstrates the lack of waiver of OSMRE's sovereign immunity.

First, Plaintiffs' last letter to OSMRE dated May 16, 2019—two days before they filed suit—demonstrates Plaintiffs knew there was no agreement with OSMRE. Carey's May 16 letter states, "I have asked you to provide me with a deadline for us to submit the requested *offer*." Letter, Carey to Austin (May 16, 2019) (emphasis added), Ex. 2. If Plaintiffs believed they had an agreement with OSMRE on April 8, they would not have sought to make an offer on May 16. Thus, even immediately before filing the instant action, Plaintiffs thought OSMRE had rejected its prior offers and they needed to submit a new offer. Therefore, looking beyond the allegations in the Complaint as the Court may do on a Rule 12(b)(1) motion, the facts show there was no acceptance of an offer and no meeting of the minds to create an express or implied-in-fact contract.

Second, the Complaint's allegations demonstrate that the parties were engaged in settlement discussions, which contemplated a written agreement. The April 26, 2019 letter that

Carey references in his May 6, 2019 letter states: "[I]t is our intent to resolve these issues with the OSM and set forth the following formal **proposal**, which we verbally conveyed to you during our meeting. We anticipate that, **once we agree to all the terms**, the agreement will be memorialized in the framework of a Consent Decree." Letter, Carey to Austin & Henson (Apr. 26, 2019) (emphasis added), Ex. 1. The letter concluded by stating, "We look forward to your response and will provide you additional information from the companies you need **to consider this proposal**." *Id.* (emphasis added). This letter clearly indicated that Plaintiffs did not believe that the parties had an agreement because it described the letter as a "proposal," set forth that they had not agreed to all the terms of a settlement, and that the "agreement will be memorialized in the framework of a Consent Decree." *Id.*

"Oral understandings which contemplate the finalization of the legal obligations in a written form are not contracts in themselves." *First Crystal Park Assocs. Ltd. Partnership v. United States*, 130 Fed. Cl. 260, 270–71 (2017); *see also Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed. Cl. 122, 137 (1996) ("Although the parties contemplated entering a lease agreement pertaining to the hospital property, however, the law is clear, that no contractual agreement is implied in fact where the parties merely engage in negotiations, anticipating that their agreement will ultimately be memorialized in a written document."). Because Plaintiffs clearly contemplated that any agreement would be memorialized in writing and there was no written agreement, there can be no implied-in-fact contract with OSMRE.

*     *     *     *

Plaintiffs failed to allege that any express or implied-in-fact contract exists to trigger a waiver of OSMRE's sovereign immunity. Moreover, looking at the parties' correspondence beyond the complaint as the Court is permitted to do on a Rule 12(b)(1) motion, Plaintiffs clearly

19

knew prior to filing suit that they lacked an express or implied-in-fact contract. As such, OSMRE has not waived its sovereign immunity, and this Court lacks subject matter jurisdiction.

### 2. The Tucker Act does not waive sovereign immunity for declaratory and injunctive relief; it only allows for money damages.

There is no statutory waiver of OSMRE's sovereign immunity for Plaintiffs' sought-after declaratory and injunctive relief against OSMRE for contract claims. The Tucker Act and Little Tucker Act waive sovereign immunity as to contract claims, but they only authorize relief in the form of money damages. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render upon any claim against the United States . . . liquidated or unliquidated *damages* in cases not sounding in tort." (emphasis added)); *id.* § 1346(a)(2) ("The district courts shall have original jurisdiction . . . for liquidated or unliquidated *damages* in cases not sounding in tort . . . ." (emphasis added)). The Tucker "Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States." *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (per curiam).

Courts considering whether they have jurisdiction to order specific performance or other equitable relief have found that "[t]he Tucker and Little Tucker Acts implicitly forbid federal courts from ordering ***declaratory or injunctive relief***" in contract claims against the government. *Vill. Of Bald Head Island v. U.S. Army Corps of Eng'rs*, 833 F. Supp. 2d 524, 534 (E.D.N.C. 2011), *aff'd*, 714 F.3d 186 (4th Cir. 2013) (emphasis added); *see also United States v. Bormes*, 568 U.S. 6, 10 (2012) ("The Little Tucker Act is one statute that unequivocally provides the Federal Government's consent to suit for certain money-damages claims."); *United States v. Mitchell*, 463 U.S. 2016, 218 (1983) ("[T]he Tucker Act provides the United States' consent to suit for claims founded upon statutes or regulations that create substantive rights to *money damages*." (emphasis added)); *Randall v. United States*, 95 F.3d 339, 348 (4th Cir. 1996) (affirming district court's

determination that it could not award back pay under the Tucker Act because it could not order equitable relief); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1082 (10th Cir. 2006); *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 143 (2d Cir. 1999); *Price v. U.S. Gen. Servs. Admins.*, 894 F.2d 323, 325 (9th Cir. 1990); *Goins v. Speer*, 2017 WL 3493607, at *4 (E.D.N.C. Aug. 14, 2017). "Thus, in the contract context, a distinct line of authority preserves the sovereign's immunity from being compelled to perform obligations it prefers to breach and compensate financially, holding that what are 'in essence' claims for breach of contract cannot circumvent the Tucker Act and its prohibition on equitable relief by being artfully pled as something else." *McKay v. United States*, 516 F.3d 848, 851 (10th Cir. 2008).

Here, Plaintiffs purportedly plead a basic breach of contract claim in which they seek specific performance, but no statute authorizes specific performance for a breach of contract claim against the government. *See Foxworth v. United States*, 2010 WL 3938267, at *4 (E.D. Va. Oct. 6, 2010) (explaining that district courts only have jurisdiction to order specific performance of contracts where a statute specifically authorizes such a remedy against the government); *see also United States v. Bormes*, 568 U.S. 6, 12 (2012) ("The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies."). In the same way that the Tucker and Little Tucker Acts prohibit equitable relief for breach of contract, so do they "impliedly forbid federal courts from order declaratory [relief] . . . for contract claims against the government." *Village of Bald Head Island*, 833 F. Supp. 2d at 534. Therefore, this Court lacks subject matter jurisdiction because OSMRE has not waived its sovereign immunity for the relief requested.

**b. The Tucker and Little Tucker Acts preclude this Court's jurisdiction because the amount at issue exceeds $10,000, and such cases must be heard by the U.S. Court of Federal Claims.**

The Tucker and Little Tucker Acts preclude this Court's jurisdiction for an additional, independent reason. The Tucker Act vests the U.S. Court of Federal Claims with "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Little Tucker Act explains "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, *not exceeding $10,000* in amount, founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2) (emphasis added). Plaintiffs seek to enforce a settlement agreement for over $10,000. Therefore, the only court that has subject matter jurisdiction over cases brought under the Tucker Act is the U.S. Court of Federal Claims. *See Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473–75 (4th Cir. 1983) (finding the U.S. Court of Federal Claims had exclusive jurisdiction over the plaintiff's claim against HUD pursuant to the Tucker Act).

## II. Plaintiffs Fail to State a Claim

Separate from the Rule 12(b)(1) pleading requirements, Plaintiffs also need to plead sufficient facts to make their breach of contract claim more than possible. They must plead facts to make their breach of contract claim "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Therefore, to plead a contract, they must plead facts to establish the elements of their breach of contract claim and not merely legal conclusions without any supporting facts. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### a. Plaintiffs do not sufficiently allege offer and acceptance.

As explained above in Section I.a.1, Plaintiffs have not pled an express or implied-in-fact contract. *See also U.S. ex rel. Allen v. Alere Home Monitoring, Inc.*, 355 F. Supp. 3d 18, 35 (D.

Mass. 2019) (finding that the communications between the parties failed to "show a meeting of the minds on the material terms of a settlement agreement"); *Spectra-4, LLP v. Uniwest Commercial Realty, Inc.*, 290 Va. 36, 46 (2015) ("[M]utuality of assent exists by an *interaction* between the parties, in the form of offer and acceptance, manifesting 'by work, act, or conduct which evince the intention of the parties to contract.' In other words, the parties' belief of what the agreement is must coincide with written or spoken words, if an express contract is to be formed; or must coincide with the parties' conduct, if an implied in-fact contract is to be formed.").

It is also notable that the Complaint acknowledges OSMRE made multiple requests for certain information before it would entertain a settlement, and Plaintiffs never provided the requested information. Am. Compl. ¶¶ 19, 24, 26, 28. As seen in *U.S. ex rel. Allen v. Alere Home Monitoring, Inc.*, a clear condition precedent that has not been met is detrimental to the existence of a contract. 355 F. Supp. 3d at 35. Therefore, even if the Tucker or Little Tucker Acts did not apply and this Court had jurisdiction over Plaintiffs' Complaint, Plaintiffs failed to plead a claim that an enforceable contract existed because OSMRE never accepted Plaintiffs' numerous offers to settle Plaintiffs' large penalties owed to the government and Plaintiffs never met the alleged conditions precedent to the alleged contract.

> **b. Plaintiffs' do not sufficiently allege promissory estoppel, and it is not a cause of action available against the government.**

Plaintiffs' Complaint also attempts to rely on promissory estoppel. Am. Compl. ¶ 33 ("[Plaintiffs] relied to their detriment on the position adopted by Mr. Castle that there was a binding Settlement Agreement."). Plaintiffs allege Castle acted with apparent authority in the April 8 meetings and thus bound the government to a settlement agreement. *Id.*

First, as explained above, Castle clearly lacked any such authority—actual or apparent— pursuant to federal statutes and regulations. *See supra* I.a.1.B. And because Castle's lack of

authority was in the United States Code and the Federal Register, Plaintiffs were on notice of his lack of authority. *Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 385–86 (1947). Therefore, taking Plaintiffs allegation that Castle's statements bound the government to a settlement agreement as true, Castle could not have exhibited apparent authority because Plaintiffs should have known that he was acting outside of his authority. As such, Plaintiffs cannot rely on promissory estoppel to state a claim for relief.

Second, promissory estoppel is not available against the government. In *Office of Pers. Management v. Richmond*, the Supreme Court refused to permit equitable estoppel against the government when the claimant sought an order of payment of benefits after he received and relied on erroneous information from a federal employee. 496 U.S. at 434. Similarly, in *Federal Crop. Insurance Corp. v. Merrill*, the Supreme Court denied equitable estoppel where a government agent falsely promised a farmer that his wheat would be covered by an insurance package. 332 U.S. at 382.

The Supreme Court recognized three impracticalities of allowing estoppel in instances where agency employees have provided false promises. First, "to open the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens." *Id*. at 433. Second, "it ignores reality to expect that the Government will be able to 'secure perfect performance from its hundreds of thousands of employees scattered throughout the continent.'" *Id*. Last, "[t]he natural consequence of a rule that made the Government liable for the statements of its agents would be a decision to cut back and impose strict controls upon Government provision of information in order to limit liability." *Id*.

24

Because Castle lacked any authority—actual or apparent—to settle Plaintiffs' $4.2 million in SMCRA violation debts and it is not a permissible cause of action against the government, Plaintiffs cannot rely on promissory estoppel to state a claim.

### c. Statute of frauds bars Plaintiffs' claim because the alleged settlement agreement contemplated longer than one year for performance.

The statute of frauds requires any agreement that is "not to be performed within the space of one year from the making of the agreement" must be in writing and signed by the parties. Tenn. Code Ann. § 29-2-101(a)(5).[6] Here, the agreement as Plaintiffs have alleged could not have been performed by April 8, 2020, and thus, was required to be in writing. Plaintiffs allege that the agreement was for "the companies [to] work to complete the reclamation work in lieu of the penalty assessments," and then if "the total penalties are not reduced below $250,000.00 by the cost of the reclamation work[,] . . . the companies [would] pay $250,000.00 over twelve months to satisfy the remaining penalty assessments." Am. Compl. ¶ 18. Therefore, the agreement contemplated an unknown amount of time for Plaintiffs to perform the reclamation work, and then, twelve monthly payments totaling $250,000.00. Thus, pursuant to the alleged contract, performance would be completed within one year from completion of the *reclamation work*, not one year from the *making of the agreement.* The alleged settlement agreement by its alleged terms was an agreement that "absolutely would not be performed within one year." *Birdwell v. Psimer*, 151 S.W.3d 916, 919 (Tenn. Ct. App. 2004). Therefore, the statute of frauds required it to be in writing. As such, Plaintiffs also failed to state a claim for relief because the statute of frauds precludes their claim regarding the existence of the alleged settlement agreement.

---

[6]    Because Plaintiffs allege that the settlement agreement was orally entered into at the April 8 meeting in Knoxville, Tennessee, Tennessee law would govern the contract. *Ohio Cas. Ins. Co. v. Travelers Indem. Co*., 493 S.W.2d 465, 466 (Tenn. 1973).

## CONCLUSION

For the foregoing reasons, Defendant requests the Court grant its Motion to Dismiss.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

Date:  November 12, 2019 _____

/s/ *Laura Day Rottenborn*
Laura Day Rottenborn
Assistant United States Attorney
Virginia State Bar No. 94021
Illinois State Bar No. 6289334

/s/ *Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney
Virginia State Bar No. 89088

P. O. Box 1709
Roanoke, VA 24008-1709
Telephone: (540) 857-2250
Facsimile: (540) 857-2283
E-mail: Krista.frith@usdoj.gov
            Laura.Rottenborn@usdoj.gov

26

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on November 12, 2019, I caused a true copy of the foregoing Memorandum of Law in Support of the United States' Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney
