UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES C. JUSTICE, III, et al.<br><br>    Plaintiffs,<br><br>V.<br><br>OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>    Defendant. | Civil Action No. 7:19-cv-00381 |

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

COMES NOW, the Plaintiffs, A & G Coal Corp., Bluestone Coal Corporation, Chestnut Land Holdings, LLC, Kentucky Fuel Corporation, National Coal, LLC, Premium Coal Company, Incorporated, S and H Mining, Inc., Tams Management, Inc., and James C. Justice, III (collectively the "Plaintiffs"), through counsel, respectfully submit their Memorandum In Opposition to the Defendant's Motion to Dismiss.

**I.    PRELIMINARY STATEMENT**

As set forth in detail below and in the Amended Complaint [Dkt. No. 19] (the "Complaint") filed by the Plaintiffs, this is a relatively simple contract action. The Plaintiffs allege that the Office of Surface Mining Reclamation and Enforcement (the "Defendant") via its agents entered into a valid and binding contract (as it had done on numerous occasions before) to resolve various fines, special reclamation fees, penalties and other claims against the Plaintiffs. The Complaint states a plausible claim for declaratory judgment against the Defendant as required by the Federal Rules of Civil Procedure.

1

In its Motion to Dismiss and supporting Memorandum, the Defendant goes to great lengths to twist the Complaint's factual allegations and timeline in an attempt to short circuit this litigation. The Plaintiffs, however, have satisfied the requirements of *Twombly* and *Iqbal*, and the Court should deny the Motion – taking all the Plaintiffs' factual allegations as true and ignoring the Defendant's spin.

In addition to attacking the sufficiency of the Plaintiffs' factual allegations, the Defendant also asserts that this Court lacks subject matter jurisdiction to adjudicate this dispute. Boiled down, the Defendant claims that the Government's sovereign immunity precludes subject matter jurisdiction because this case seeks declaratory relief, instead of monetary damages. The Defendant relies primarily on the Tucker Act, 28 U.S.C. § 1491, to support its claims of sovereign immunity, but ignores the right of the Plaintiffs to seek a declaratory judgement against a Government actor under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. The APA creates a waiver of sovereign immunity applicable here and the Defendant's Motion to Dismiss for lack of subject matter jurisdiction should be denied.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### a. The Agreement

The Plaintiffs own and operate various coal mines throughout the Virginia, West Virginia, Kentucky and Tennessee. The Defendant oversees, in part, the regulation of these mines, including the reclamation efforts of mine operators such as the Plaintiffs. Prior to April 2019, the Defendant, in its official capacity, assessed various penalties against the Plaintiffs. (Am. Compl. ¶ 14). These penalties and assessments were levied against various entities and Mr. Justice himself. *See* Am. Compl., Ex. A. For years, the Defendant and the Plaintiffs had

negotiated settlements of outstanding penalties and assessments, which included agreements that the Plaintiffs perform certain reclamation and abatement work.

In an effort to resolve the penalties and assessments which had accrued prior to April 2019, the Plaintiffs' representatives met with Michael Castle, the Field Director of the Knoxville and Lexington Field Offices of OSMRE as well as Mark Snyder, a representative of OSMRE. (Am. Compl. ¶ 18).  During a series of meetings, which included the presence of various attorneys for each side, the parties reached an agreement to resolve the outstanding penalties and assessments as follows:

- The Plaintiffs would complete the outstanding reclamation work in lieu of the penalty assessments and the assessments would be reduced by the cost of the reclamation work (Am. Compl. ¶ 18);

- The Plaintiffs would pay $250,000.00 over 12 months to satisfy the remaining assessments (Am. Compl. ¶ 18);

- The Plaintiffs would pay the AML fees over 12 months (Am. Compl. ¶ 18); and

- The Plaintiffs would immediately begin the reclamation work (Am. Compl. ¶ 20).

The parties agreed to each of these specific terms in April 2019.  (Am. Compl. ¶ 18 – 20). During the negotiations and afterward, representatives from OSMRE advised the Plaintiffs that they had authority to negotiate and agree to the terms set forth above.  (Am. Compl. ¶ 21).  This was a practice that was previously utilized by representatives of OSMRE in resolving disputes of this nature with the Plaintiffs.  (Am. Compl. ¶ 22).  In reliance on the parties' agreement, the

Plaintiffs mobilized equipment, manpower and machinery to begin the reclamation work. (Am. Compl. ¶ 27).[1]

### b. The Defendant Ignores Its Agreement And Disavows Its Promises

After reaching agreement in April 2019, the Defendant's attitude toward the Plaintiffs began to sour. On May 15, 2019, nearly 30 days after the parties' agreement, the Defendant advised the Plaintiffs that its representatives had no authority to bind OSMRE to the terms of the settlement agreement. (Am. Compl. ¶ 32). This was after OSMRE was advised that the Plaintiffs had already started to partially perform under the terms of the agreement.

### c. Proceedings To Date

Plaintiffs initiated litigation on May 17, 2019. Following service of summons, the Complaint and related suit papers on the Defendant, the Defendant moved to dismiss on November 12, 2019.

## ARGUMENTS & AUTHORITIES

### III. THE DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) IGNORES KEY ALLEGATIONS IN THE COMPLAINT AND FAILS TO ADDRESS ESTABLISHED CASE LAW WHICH FAVORS THE PLAINTIFFS AT THIS STAGE OF THE PROCEEDINGS

### a. Legal Standard Of Review For A Motion To Dismiss Pursuant To Rule 12(b)(6)

The legal standard for the Court's review of a motion to dismiss for failure to state a claim upon which relief may be granted is well established: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this Circuit, the plausibility standard has been

---

[1] To date, the Plaintiffs have paid the AML fees, which could have paid over a 12-month period and have performed approximately 95% of the reclamation work. OSMRE has been consistently apprised of these efforts, accepted payment, and reviewed the reclamation work for compliance.

4

interpreted to mean that "'naked assertions' of wrongdoing" are insufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). A reviewing court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts, and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted).

### b. The Complaint States A Plausible Claim For A Valid Contract

At the outset, the Defendant claims that the Plaintiffs failed to state a claim for a valid contract because "OSMRE never accepted Plaintiffs' numerous offers to settle Plaintiffs large penalties owed to the government." (Mem. Supp. Mot. Dismiss p. 23). This argument ignores the plain language of the Complaint and the allegations therein which must be accepted as true at this stage of the proceedings. *See Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that in considering a motion to dismiss the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the Plaintiffs).

The Complaint clearly outlines a valid and binding agreement. For example, in paragraph 18 of the Complaint, it is alleged that Mr. Justice proposed "that the companies work to complete the reclamation work in lieu of the penalty assessments and that the penalty assessments be reduced by the cost of the reclamation." (Am. Compl. ¶ 18). It was further proposed that the Justice Companies pay $250,000.00 over 12 months to satisfy the remaining penalty assessments. *Id.* Critically, the Complaint then expressly alleges that these terms were agreed to by the parties.

A settlement agreement is a contract. *See Bangor-Punta Ops., Inc. v. Atl. Leasing, Ltd.*, 215 Va. 180, 183 (1974) ("[T]he essentials of a valid contract must be present to support a

compromise settlement."). Generally speaking, there are two predicates to the formation of a legally binding contract: (1) consideration and (2) mutual assent. *See Dean v. Morris*, 287 Va. 531, 536 (2014) (citation omitted). Typically, for an express contract, mutuality of assent is demonstrated by proof of an offer and an acceptance. *Spectra-4, LLP v. Uniwest Commercial Realty, Inc.*, 290 Va. 36, 46 (2015).

Mr. Justice's proposal that the Plaintiffs perform reclamation work in lieu of the penalty assessments and that the assessments be reduced by the cost of the reclamation was an offer. Likewise, Mr. Justice's proposal that the Plaintiffs collectively pay $250,000.00 was an offer. When the Complaint alleges that "Mr. Castle and Jay Justice both agreed to the foregoing terms" it clearly demonstrates that the Defendant accepted these offers. This is certainly a reasonable inference from the plain allegations of the Complaint which must be drawn in favor of the Plaintiff at this stage of the proceedings. *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001) (in considering a Rule 12(b)(6) motion, a court must draw all reasonable inferences in favor of the plaintiff). Indeed, the Defendant's argument to the contrary is merely a factual dispute that cannot be resolved in the context of a Motion to Dismiss.

The same holds true for the issue of collateral discussed in paragraph 20 of the Complaint. Again, it is alleged that Mr. Justice agreed that he would place equipment in the field by May 1, 2019 and complete the work by October 31, 2019. It is further alleged that the parties agreed to these terms. This is a classic offer and acceptance scenario where one side proposed terms and the other side accepted.

The Defendant ignores these allegations and instead focuses on the May 2019 communications attached as an exhibit to the Complaint. This is misguided. The May communications occurred *after* the parties reached the agreement to compromise the assessments

in exchange for reclamation work and were only sent after the "government's attitude toward the Justice mining Entities noticeably soured." (Am. Compl. ¶ 29). In other words, the May communications were an effort to avoid litigation (which was purportedly forthcoming by the Government), not renegotiate the terms of the April agreement. This is apparent from the plain allegations of the Complaint in paragraph 32, which noted that OSMRE's position changed and they were insisting that Mr. Castle had no authority to bind the Defendant to the April agreement.

The Complaint alleges an offer, acceptance, and partial performance- which was accepted by the Defendant without objection. The Defendant's attempt to undermine the clear import of the Complaint's allegations should be rejected by this Court. Whether or not an agreement existed and the terms of said agreement are factual disputes better left for resolution in future proceedings, after sufficient time for discovery has been permitted.

      c.    **<u>The Statute Of Frauds Is Inapplicable To These Proceedings</u>**

The Defendant also makes an argument concerning the Statute of Frauds and notes that the agreement must be in writing and signed by the parties since it could not have been performed by April 8, 2020. *See* Tenn. Code Ann § 29-2-101(a)(5). It is true that the Statute of Frauds requires that parties memorialize certain types of contracts in writing for the contract to be enforceable. The Statute has been construed to apply to contracts where, by express understanding of the parties, it was agreed the contract would not be performed within the year. *Trew v. Ogle*, 767 S.W.2d 662, 664 (Tenn. Ct. App. 1988). There are, however, exceptions to this rule. The most commonly recognized exception to the Statute of Frauds is the doctrine of part performance. Under it, an otherwise unenforceable oral contract can be the basis of an

action if one of the parties has performed pursuant to the contract. *Trew*, at 664 (citing A. Corbin, *Corbin on Contracts*, § 420 (One Volume Ed. 1952)).

Here, the Complaint's allegations establish that after the agreement was reached, the Plaintiffs incurred significant expenses in mobilizing equipment and commencing the reclamation work that the Defendant requested. It is specifically alleged that the Plaintiffs "commenced their performance under the Settlement Agreement and have continued performing in accordance with that Agreement to this day." (Am. Compl. ¶ 27). Tennessee courts have recognized a part performance exception to the Statute of Frauds, which is applicable to oral contracts other than for the sale of land. *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn. 1983); *Foust v. Carney*, 205 Tenn. 604, 329 S.W.2d 826, 829 (1959); *Buice v. Scruggs Equipment Co.*, 194 Tenn. 129, 250 S.W.2d 44, 47 (1952). Again, the Defendant's failure to recognize this exception and the Complaint's clear allegations dooms its Statute of Frauds argument.

### IV. THE COURT HAS SUBJECT MATTER JURISDICTION TO ADJUDICATE THIS CASE AND THE TUCKER ACT AND RELATED STATUTES ARE INAPPLICABLE TO THESE PROCEEDINGS

#### a. Legal Standard Of Review For A Motion To Dismiss Pursuant To Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(1), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to

prevail as a matter of law." *Id.* When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

In suits against the Government, subject-matter jurisdiction turns on at least "two different jurisdictional questions." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006). First, has Congress provided an affirmative grant of subject-matter jurisdiction? And, second, has Congress waived the United States' immunity to suit? *See id*. at 185; *Transohio Savings Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 606 (D.C. Cir. 1992). Only if Congress has done both may this Court reach the merits. The Defendant trains its arguments on the second question.

  b. **<u>The Tucker Act Is Inapplicable To These Proceedings</u>**

The Defendant correctly points out that the Tucker Act waives sovereign immunity as to contract claims, but it only authorizes relief in the form of money damages. *See* 28 U.S.C. § 1491(a)(1). The jurisdiction for this suit, however, lies in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. That section provides in relevant part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. Provided, That . . . [n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

Importantly, this waiver applies to any suit that meets its conditions, "whether under the APA or not." *Trudeau*, 456 F.3d at 186. As such, the waiver of sovereign immunity contained

9

in § 702 applies specifically to the claim at issue because the Plaintiffs are not seeking monetary damages and no other statute "impliedly forbids the relief which is sought."

The Defendant will undoubtedly argue that the Tucker Act and associated statutes forbid the relief sought. The Tucker Act waives sovereign immunity for actions "founded upon . . . any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983). The one exception is the provision commonly known as the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), which allows such suits to proceed in district courts, instead, provided the amount in controversy is no greater than $10,000. Whether the Tucker Act "impliedly forbids" the application of § 702 to the Plaintiffs' claims is not easily resolved.

For years, the case law seemingly indicated that the Tucker Act provided the exclusive wavier of sovereign immunity in suits against the government. *See Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 & n.2 (D.C. Cir. 1985). That changed in *Bowen v. Massachusetts*, 487 U.S. 879 (1988). In *Bowen,* the United States Supreme Court noted that "it is often assumed that the [Court of Federal Claims] has exclusive jurisdiction of Tucker Act claims for more than $10,000. . . That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction." *Id.* at 910 n.48. Instead, the *Bowen* court reasoned that the grant appears to be exclusive only because Congress has not granted any other authority to hear such claims. *Id.*

Cases following *Bowen* have recognized the "strong case that, after *Bowen*, the Tucker Act should not be read to 'impliedly forbid' the bringing of suits under the APA in district court of contract actions for specific relief." *See Transohio Savings Bank*, 967 F.2d at 612. But cases after *Bowen* have, to date, appeared to decline to overrule the very specific holdings that the APA does not waive sovereign immunity for contract claims seeking specific relief. However, in

10

other contexts, courts have found that the APA permits declaratory judgment relief to void contracts involving the Government. *Rashid v. United States*, 2001 U.S. Dist. LEXIS 25414, (Civil Action No.: 2:01-0181 S.D. W.Va 2001).

Here, when you have a clear contractual obligation between a government agency and a citizen, which is bolstered by a history of course of dealing, the APA should be utilized to permit a citizen to receive the benefit of his bargain. To permit the Defendant to skirt its obligations and hide behind arcane legal doctrines would be unequitable. The facts, as alleged, clearly establish a contractual obligation. Moreover, the Plaintiffs have relied upon that obligation, have paid monetary penalties and incurred huge expenses in an attempt to comply with the agreement. The Defendant has accepted the Plaintiffs' money and hard work, but instead of honoring its obligations retreats to the comfort of the Tucker Act. This Court should not permit such a result to stand.[2]

    **c.**    **Assuming, *Arguendo*, That The Tucker Act Does Apply, This Court Has Jurisdiction To Hear this Dispute**

The Defendant attacks the Plaintiffs' contract claims, via a Rule 12(b)(1) Motion, in part, by arguing that Mr. Castle lacked statutory authority to accept the $250,000.00 settlement offer pursuant to 31 U.S.C. § 3711(a)(2). Regardless of the fact that OSMRE has ignored this statutory provision for years in its dealing with the Plaintiffs, the Defendant's argument must fail because it ignores the fact that the $250,000.00 settlement was reached on behalf of 13 different legal entities all with assessments and penalties pending before OSMRE. *See* Am. Compl., Ex.

---

[2] One need only think of the absurdity that would result if the Government was permitted to undertake such actions. For example, what if the Plaintiffs had entered into what they thought was a binding agreement with the Defendant. And what if the Plaintiffs had paid all of the fines, performed all of the reclamation work and otherwise complied with the terms of the agreement. Under the Defendant's theory, OSMRE would still be permitted to collect the full amount of the outstanding penalties and interest in a suit against the Plaintiffs- claiming that the agreement its agents executed was not binding. When viewed in this context, the illogical nature of the Defendant's argument is exposed.

A. When viewed as a global settlement to resolve 13 separate and distinct disputes, it is clear that Mr. Castle could settle these disputes because the total value of the separate disputes is under the $100,000 threshold permitted by statute. Stated differently, the $250,000.00 settlement figure could be allocated among 13 different entities to satisfy the $100,000 threshold applicable to each separate and distinct assessment. Again, this is a factual issue better left for trial – not resolution on a Motion to Dismiss.

Also, the Complaint alleges that Mr. Castle held himself out as having actual authority to resolve these disputes. (Am. Compl. ¶ 22). Thus, it is inferred that Mr. Castle, by his own statements outlined in the Complaint, was designated by the head of the agency to resolve the claims at issue.

In a final effort to defeat jurisdiction, the Defendant argues that the Plaintiffs seek to enforce an agreement for over $10,000 and thus the proper forum to adjudicate this dispute is the United States Court of Federal Claims. While the Complaint does not seek specific monetary damages, other courts considering the issue have found that if the action "in whole or in part, [ ] explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government," the proper forum is the United States Court of Federal Claims. *See Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995).

If this Court finds that the Defendant's argument concerning transfer has merit and therefore this Court lacks subject matter jurisdiction, the Court "shall, if it is in the interest of justice, transfer [the] action . . . to any other such court in which [it] could have been brought at the time it was filed." 28 U.S.C. § 1631. As such, the Court may need to transfer this action to the U.S. Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1). The propriety of doing so, of course, depends not only on the subject-matter jurisdiction of this Court, but also on the

jurisdiction of the Court of Federal Claims. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1304 (Fed. Cir. 2008).

## CONCLUSION

For years, these very parties have resolved disputes in the field and in the coal mines throughout the MidAtlantic. No formal authority was requested, and none was demanded. Now, after years of this gentlemanly arrangement, OSMRE seeks to avoid a binding agreement through clever legal tactics.

This litigation is in its infancy and to permit the Defendant to avoid its obligations by claiming that a proposal was not accepted (despite plain language in the Complaint to the contrary) or that the head of a Government field office did not have authority to resolve a dispute ignores the questions before this Court, which are: (1) have the Plaintiffs placed the Defendant on notice of its claims through plausible allegations; and (2) does this Court have subject matter jurisdiction. The only fair and equitable answer to both is "yes" and this litigation should proceed. The Plaintiffs pray that this Court deny the Defendant's Motion to Dismiss.

        Respectfully submitted,

        JAMES C. JUSTICE, III, et al.

        /s/ Aaron B. Houchens
        AARON B. HOUCHENS (VSB #80489)
        AARON B. HOUCHENS, P.C.
        111 East Main Street
        P.O. Box 1250
        Salem, Virginia 24153
        Telephone: (540) 389-4498
        Facsimile: (540) 339-3903
        aaron@houchenslaw.com

        And

>RICHARD A. GETTY
>(*Pro Hac Vice* Admission)
>THE GETTY LAW GROUP, PLLC
>1900 Lexington Financial Center
>250 West Main Street
>Lexington, Kentucky 40507
>Telephone: (859) 259-1900
>Facsimile: (859) 259-1909
>Email: rgetty@gettylawgroup.com
>
>COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th of January 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and the foregoing was sent to the following:

Krista Consiglio Frith
Assistant United States Attorney
United States Attorney's Office for the Western District of Virginia
BB&T Building
310 First Street, S.W. Room 906
Roanoke, VA 24008
540-857-2250
Fax: 857-2179

>/s/    Aaron Balla Houchens