IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JAMES C. JUSTICE, III, <u>et al.</u>,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Civil Action No. 7:19CV00381
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　**MEMORANDUM OPINION**
OFFICE OF SURFACE MINING　　　　　)
RECLAMATION AND ENFORCEMENT,　)　　By: Hon. Glen E. Conrad
UNITED STATES DEPARTMENT OF　　)　　Senior United States District Judge
THE INTERIOR,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)

This matter is before the court on the motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by the Office of Surface Mining Reclamation and Enforcement ("OSMRE"), a bureau of the U.S. Department of the Interior ("Interior"), to dismiss the amended Declaratory Judgment Act complaint filed by A & G Coal Corp., Bluestone Coal Corporation, Chestnut Land Holdings, LLC, Kentucky Fuel Corporation, National Coal, LLC, Premium Coal Company, Incorporated, S and H Mining, Inc., Tams Management, Inc., and James C. Justice, III (collectively the "Mine Operators").  For the reasons stated, the court will grant the motion to dismiss.

## Background

The Mine Operators own and operate various coal mines throughout Virginia, West Virginia, Kentucky, and Tennessee.  OSMRE oversees, in part, the regulation of these mines, including the reclamation efforts of the Mine Operators.  Prior to April 2019, OSMRE imposed various fees, penalties, and assessments against the Mine Operators.  Am. Compl. ¶ 14; Am. Compl., Ex. A.

On April 8, 2019, representatives of the Mine Operators—Jay Justice and Tom Lusk—met with Michael Castle, the Field Office Director of the Knoxville and Lexington Field Offices of

OSMRE, and Mark Snyder, also with OSMRE, in Knoxville.  Am. Compl. ¶ 18.  On May 13, 2019, counsel for the Mine Operators sent Interior a letter that purported to memorialize that meeting.  Am. Compl. Ex. B.  According to that letter, the parties "discussed the penalties against" the Mine Operators.  The Mine Operators' representatives "proposed that the [Mine Operators] pay $250,000.00 over twelve months to satisfy the remaining penalty assessments.  This meeting concluded with Mr. Justice agreeing to pay the [amount] over twelve months."  Id.  Castle then stated he would "discuss this proposal."  Id.  The letter further describes discussions regarding potential security arrangements for the payment plan.  Id.  In conclusory fashion, the Mine Operators allege that Castle and Jay Justice "both agreed to the foregoing terms."  Am. Compl. ¶¶ 18, 20.

According to the Mine Operators, OSMRE "consistently and clearly held out [] Castle" as an agent, and Castle "maintained that he" alone was empowered to negotiate such agreements.  Id. ¶ 21.  The Mine Operators also allege that Castle stated that "Thomas Shope, Regional Manager of the Appalachian Region of OSMRE, approved the parties' agreement."  Id. ¶ 23.  Thereafter, the Mine Operators allegedly began to incur "significant expense" towards complying with the purported agreement, "in reliance" on its terms.  Id. ¶ 27.

On May 15, 2019, counsel for Interior wrote a letter in response to the Mine Operators' May 13 letter.  This letter stated:

> I need to reiterate what you and your clients have been told: Neither OSMRE nor any of its employees nor the attorneys representing the Secretary of the Interior have the authority to settle a debt owed to the United States that exceeds $100,000.00 without the approval of the U.S. Department of Justice (DOJ).  See 31 U.S.C. § 9711 [sic] and 31 C.F.R. § 902.1.  Therefore, notwithstanding your clients' assertion about a deal they believe they made with OSMRE, there is not nor has there been an authorized agreement with the United States to settle the monetary debts of your clients for $250,000.00, or for any other amount.

2

. . .

> We look forward to working out a settlement with you, your clients,
> and DOJ.

Am. Compl. Ex. C.  The Mine Operators allege that the government has threatened enforcement actions to recover the fees, penalties, and assessments at issue, which the Mine Operators claim violates the purported settlement agreement.

### Procedural History

The Mine Operators and other plaintiffs first filed a complaint on May 17, 2019, seeking a declaratory judgment that that the parties' alleged agreement is valid and enforceable against OSMRE and that OSMRE should take no further steps regarding the underlying assessments, fees, and penalties.  Compl. ¶ 45.  On August 23, 2019, the Mine Operators filed an amended complaint seeking the same declaratory relief.  Am. Compl. ¶ 41.  The instant motion to dismiss followed.

### Standard of Review

Federal district courts have limited jurisdiction with specific jurisdictional requirements. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  Consequently, this court may only hear cases to the extent authorized by the Constitution and by statute.  See Kokkonen, 511 U.S. at 377. Further, federal courts must assume that a case lies outside of their limited jurisdiction until the party asserting jurisdiction meets its burden to show otherwise.  See id.; Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).  Finally, subject matter jurisdiction is a threshold issue, and the court must address it before reaching the merits of the case.  Sigmon Coal Co. v. Apfel, 226 F.3d 291, 298–99 (4th Cir. 2000), aff'd sub nom. Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002).

A motion under Federal Rule of Civil Procedure 12(b)(1) seeks dismissal for lack of subject matter jurisdiction.  These motions arise in one of two forms: facial challenges or factual challenges.  See Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017); Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).  A facial challenge to subject matter jurisdiction assumes that the facts alleged are true, as in a motion under Rule 12(b)(6), and contends that a complaint "fails to allege facts upon which subject matter jurisdiction can be based."  Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Therefore, a facial challenge "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  Id.  Under a factual challenge, which asserts that "the allegations are factually untrue," courts may consider evidence outside the complaint.  Id.  Here, the government argues that the court lacks subject matter jurisdiction under both analyses.

## Discussion

The court must first determine whether it has subject matter jurisdiction over the Mine Operators' suit.  "The United States is immune from suit unless it unequivocally consents."  Maine Cmty. Health Options v. United States, 140 S. Ct. 1308, 1327 (2020).  In the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346, Congress waived the United States' sovereign immunity for breach-of-contract claims, but only if an express or implied-in-fact contract exists, "not to claims on contracts implied in law."  Hercules Inc. v. United States, 516 U.S. 417, 423 (1996).  Moreover, the forum for such suits is limited by statute.  "The United States Court of Federal Claims shall have jurisdiction to render upon any claim against the United States . . . liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  Under the Little Tucker Act, "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim

against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). The Mine Operators seek enforcement of a purported contract with a value well over $10,000. As a result, this court has no jurisdiction to hear this suit under the Tucker Act and the Little Tucker Act.

The Mine Operators argue that the court has jurisdiction over this case under the Administrative Procedure Act. The Administrative Procedure Act permits federal district courts to hear actions "seeking relief other than money damages" against the United States "*[p]rovided*, [t]hat . . . [n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702 (emphasis in original). As other courts have previously held, this court concludes that the Tucker Act "impliedly forbids" the Mine Operators' contract claim against the Government from being brought in district court under the waiver in Section 702 of the Administrative Procedure Act. See Robbins v. U.S. Bureau of Land Mgmt., 438 F.3d 1074, 1082 (10th Cir. 2006) (holding that "the Tucker and Little Tucker Acts 'impliedly forbid' federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for contract claims against the government") (collecting cases); Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys., 357 F.3d 62, 67–69 (D.C. Cir. 2004) ("[A]ppellants' claim turns *entirely* on the terms of a contract . . . . We therefore agree with the district court that the Tucker Act deprives it of jurisdiction . . . ."); N. Side Lumber Co. v. Block, 753 F.2d 1482, 1486 (9th Cir. 1985) (ruling that Tucker Act precluded jurisdiction over claim that was "concerned solely with rights created within the contractual relationship and ha[d] nothing to do with duties arising independently of the contract"). Accordingly, the court lacks jurisdiction over this suit under either a facial challenge or a factual challenge.

Having concluded that it lacks subject matter jurisdiction, the court must decide whether to transfer this action to the Court of Federal Claims or to dismiss the action:  the Mine Operators have requested transfer in the alternative to their opposition to the government's motion to dismiss. Section 1631 of Title 28 provides that if a court "finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . ."  Thus, the court must determine whether the Mine Operators could have brought this action in the Court of Federal Claims.

As is relevant here, "to invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship . . . ."  Khan v. United States, 201 F.3d 1375, 1377 (Fed. Cir. 2000).  "To form an agreement binding upon the government, four basic requirements must be met: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003).

Federal law limits the ability of government officers to enter settlement agreements, like the one at issue in this case.  Section 3711(a)(2) of Title 31 provides that: "The head of an executive, judicial, or legislative agency . . . may compromise a claim of the Government of not more than $100,000 (excluding interest) or such higher amount as the Attorney General may from time to time prescribe . . . ."  The pertinent federal regulation, which "appl[ies] to the compromise of debts pursuant to 31 U.S.C. 3711," provides that:

> Unless otherwise provided by law, when the principal balance of a debt, exclusive of interest, penalties, and administrative costs, exceeds $100,000 or any higher amount authorized by the Attorney General, the authority to accept the compromise rests with the Department of Justice.

31 C.F.R. § 902.1.

The court concludes that the Mine Operators have failed to allege that Castle had actual authority to enter into the purported settlement agreement.  Accordingly, the court need not address the government's remaining arguments.  First, the above limitations apply because the alleged agreement pertained to an amount over $100,000.  Second, Castle—who the Mine Operators allege entered the purported settlement agreement on behalf of the government—was not the head of an agency.  Nor is there any allegation that the United States Department of Justice authorized settling the claims at issue.  As a result, the parties did not comply with the statutory and regulatory requirements of settling a claim with the United States.  There was, thus, no enforceable agreement. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998) ("As we have held before, agency procedures must be followed before a binding contract can be formed."); see also Riverside Bldg. Supply, Inc. v. Fed. Emergency Mgmt. Agency, 723 F.2d 1159, 1161 (4th Cir. 1983) (affirming that government insurance policy did not cover damages because of "the limitations on the authority" of the government defendant to contract for such insurance).

Likewise, the Mine Operators' arguments that Castle had apparent authority to enter a settlement also fail: apparent authority does not bind the United States in contract actions. "[A]nyone entering into an arrangement with the Government" is responsible for "accurately ascertain[ing] that he who purports to act for the Government stays within the bounds of his authority." Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).  Thus, "[w]here a party contracts with the government, apparent authority of the government's agent . . . is not sufficient; an agent must have actual authority to bind the government." Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1344 (Fed. Cir. 2007).

Accordingly, the Mine Operators have not alleged a binding agreement with the United States, and thus, have alleged no basis for a claim over which the Court of Federal Claims could have jurisdiction.[1]  For that reason, the court believes that dismissal rather than transfer of this case serves the interests of justice.  See 28 U.S.C. § 1631; On-Site Screening, Inc. v. United States, 687 F.3d 896, 900 (7th Cir. 2012) (affirming decision to dismiss rather than transfer the action where the pleadings stated no claim under the Tucker Act).

## Conclusion

For the reasons stated, the court will grant the motion to dismiss the amended complaint.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This  19th day of May, 2020.

_____
Senior United States District Judge

---

[1]     For these same reasons, dismissal would be proper under Rule 12(b)(6) if the court in fact had subject matter jurisdiction over this case.